CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 29 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CINDERELLA L. ALLEN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 7:08CV00588 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant | ) |

## REPORT AND RECOMMENDATION

Plaintiff, Cinderella L. Allen ("Allen"), brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits and supplemental security income under the Social Security Act ("Act"). The issues on appeal are whether the Administrative Law Judge ("ALJ") properly considered certain medical opinions and evaluated Allen's subjective complaints of pain. At the time of the ALJ's decision, the record did not contain certain medical records and opinions from several treating physicians which were later presented to the Appeals Council. Although the Appeals Council did not grant Allen's request to review the ALJ's decision, it is reasonably possible that this new information may change the Commissioner's decision. As such, it is **RECOMMENDED** that this case be **REMANDED** to the Commissioner for administrative consideration of this evidence.

### I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171,

176 (4th Cir. 2001). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that his ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor reweigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423 (d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, whether he or she (5) can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520) (2005). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Heckler, 461 U.S. at 460. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the Residual Functional Capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Allen, born in 1955, filed her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on January 9, 2003, claiming that she was disabled from January 1, 2000 primarily due to cardiac problems and back and neck pain. (Administrative

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g. pain). See 20 C.F.R. § 404.1529(a).

3

Record ("R.") at 110-11.) Allen did not complete the eleventh grade, and worked as a nail technician in a beauty salon and as a clerk for a contractor. (R. 104.)

Allen argues that she is disabled by her cardiac condition and by degenerative disc disease of her cervical and lumbar spine. Allen has a long history of back and neck problems dating back many years, requiring multiple surgeries. Allen had five back surgeries, the last of which was in 1992. (R. 342.) Her last cervical spine surgery was in 1993, (R. 349), and predated her disability onset date by roughly six years, during which time she was able to work.

More recently, Allen has suffered from heart problems. In September, 1999, Allen was hospitalized for chest pain, but a consulting cardiologist deemed her pain atypical for angina. (R. 198.) Following this hospitalization, there are no records of any medical treatment during the next four years.

In 2003 and 2004, Allen had monthly visits to a health care provider, which are noted as a "med check." Although somewhat difficult to decipher, these notes appear to be monthly medicine checks of the MS Contin (Morphine Sulfate Controlled Release) Allen was prescribed for her back pain.

Allen suffered a heart attack in August, 2004 and underwent cardiac catheterization in Maryland. (R. 243.)[2] A cardiologist's note concerning a clinic visit on September 10, 2004 noted Allen's evidence of a prior heart attack, but no evidence of heart failure. Her cardiac status was noted to be stable. (R. 262.) Four days later, was admitted to the University of Maryland Medical System with acute pulmonary edema and underwent left heart catheterization, selective

---

[2]Although there are no medical records in the administrative transcript for this hospitalization, treatment notes concerning follow up care are in the record.

coronary angiography, and left ventriculography. The attending physician's impression was of some heart wall motion abnormalities possibly secondary to acute occlusion of coronary arteries or "possible asymmetric cardiomyopathy secondary to long-term cocaine abuse." (R. 243.) The report noted "no significant obstructive disease," continued her medication regimen, and stated that "[t]he patient was strongly advised to quit using cocaine." (R. 244.)

A month later, on October 10, 2004, Allen was seen at Carilion Health System in Roanoke complaining of shortness of breath. At that time she was visiting her mother who had been diagnosed with Alzheimers. A cardiology consult noted Allen's two recent catheterizations, each of which "showed normal coronaries." (R. 251.) Allen's medications were adjusted, and she was discharged as stable on October 12, 2004. (R. 249-50.)

The record contains a number of medical assessments concerning Allen's functional capacity. Allen was examined by Dr. William Humphries at the request of the state agency on August 25, 2004, a few weeks after her cardiac catheterization in Maryland. (R. 233-36.) Dr. Humphries' noted Allen's long history of back pain and surgery. Allen told Dr. Humphries that she "continues to have low back pain on intermittent basis, expected to come along with bending, stooping and using her back very much." (R. 233.) Allen also reported "neck pain at all times, worse with movement." (R. 233.) Allen also described occasional sharp chest pain which lasts a few seconds. (R. 233.) Dr. Humphries history also noted bilateral carpal tunnel syndrome and that Allen had surgery on the right side. "She still has some intermittent discomfort in both her wrists area." (R. 234.) Dr. Humphries' physical examination of Allen noted moderately reduced neck range of motion, slightly reduced back range of motion and negative straight leg raising. Dr. Humphries noted full joint range of motion with some low back pain on extremes of

motion of both hips. (R. 234.) Allen's neurological exam was essentially normal, except that Allen tended to guard her neck and back when getting on and off the examining table. (235.) Dr. Humphries noted no problems with Allen's mental status. Dr. Humphries concluded that Allen was limited to six hours of sitting and two hours of standing and walking. Allen could lift 25 pounds occasionally and 10 pounds frequently. (R. 236.)

In contrast to Dr. Humphries' opinion, Dr. Howard K. Schultz completed a Cardiac Residual Functional Capacity Questionnaire on June 1, 2005, essentially concluding that Allen could not work. Dr. Schultz noted Allen's chronic low back pain and coronary artery disease. As to the latter, he deferred to her cardiologist. For her back and neck pain, Dr. Schultz noted that Allen took 420 mg/day of MS Contin as directed by the Hopkins Hospital Pain Center. (R. 271.) Dr. Schultz noted that Allen's physical problems caused her emotional difficulties over the years and that it was worse following her heart attack. (R. 270.) Dr. Schultz estimated that Allen could walk one-half to one city block without rest, had no idea how long she could sit and work, and concluded that she could only stand for ten minutes at a time. Dr. Schultz stated that Allen could not lift any amount of weight secondary to her back condition.

Such was the state of the administrative record prior to the date of the administrative hearing, June 27, 2006. At the hearing, Allen produced three pieces of documentary medical evidence. The first consisted of medical records from Allen's cardiac care in Roanoke in early 2006, reflecting conservative care. (R. 275-89.)

The second was a letter from John P. Yingling, P.A.-C, and Dr. Randy F. Davis of Bay Area Orthopaedics and Sports Medicine in Maryland dated July 14, 2005 which stated that as of July, 1999, "it was documented that she was disabled and unable to work to any gainful

6

employment. At that juncture, it was considered permanent." (R. 290.) The letter noted that Allen had not been seen in that office since July 19, 1999, and had no information as to her present condition.

The third was a Physical Residual Functional Capacity Questionnaire completed by Dr. David Keilman, a family practitioner at Lewis-Gale Physicians, LLC, on June 22, 2006. (R. 291-95.) This assessment noted that he first saw Allen on November 23, 2005 and saw her occasionally since then. Dr. Keilman diagnosed Allen with chronic neck and back pain, coronary artery disease and depression, which he described as "stable-chronic problems with little chance of any significant improvement." (R. 291.) Dr. Keilman estimated that Allen's pain was severe enough to interfere with her attention and concentration frequently (defined as 34-66% of an eight hour workday). (R. 292.) Dr. Keilman stated that Allen could stand for 10 minutes and sit or stand/walk less than two hours in an eight hour day. (293.) Dr. Keilman determined that Allen could lift less than ten pounds frequently and ten pounds occasionally.

Following the ALJ's decision, Allen's counsel submitted seventy-two pages of additional medical records to the Appeals Council, principally concerning her back and neck issues, including two strongly worded disability opinions from Drs. Davis and Marco Pappagallo, dated January, 2007.

On the basis of a follow-up examination conducted by Dr. Randy F. Davis on January 9, 2007, reflecting his review of x-rays showing disc fusion and other evidence of Allen's multiple cervical and lumbar spine surgeries, Dr. Davis concluded that "[t]here's no question the patient remains disabled in association with her chronic cervical lumbar problems as well as the cardiac

issues she has. I do not believe she's capable of any gainful employment at this juncture." (R. 361.)

Likewise, Dr. Marco Pappagallo of the Mount Sinai School of Medicine in New York penned a handwritten note dated January 23, 2007 stating that Allen has been his patient for approximately fifteen years. Dr. Pappagallo concludes that "[i]t is my opinion that Cinderella Allen suffers from disabling back pain that failed to respond to multiple surgeries and treatments. I believe she is totally permanently disabled." (R. 360, emphasis in original.) (R. 296-367.) The Appeals Council received these two opinions and the other approximately seventy pages of medical records into the administrative record, (R. 9-10), and, without explanation, concluded that "this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 6.)

### III.

The Appeals Council must consider evidence submitted to it when it is deciding whether to grant review, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary, Dept. of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc). Where, as here, the Appeals Council considered the additional evidence submitted to it, but denied review, the Fourth Circuit requires the district court to "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins, 953 F.2d at 96.

While the Appeals Council is not required by its regulatory scheme to provide a detailed statement of reasons regarding evidence submitted to it for the first time, its failure to deal with

8

such evidence in any fashion meaningful to the district court's substantial evidence review runs the risk of a remand to require the Commissioner to explicitly consider the additional evidence under certain circumstances. As the court noted in Riley v. Apfel, 88 F. Supp. 2d 572, 580 (W.D. Va. 2000), "the agency leaves itself open to criticism when no explanation regarding material evidence within the record is provided." Such a remand is necessary where the additional evidence is "conflicting," or presents "material competing testimony," Riley, id.; is "contradictory," Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 3-4 (W.D. Va. Oct. 19, 2004); or "calls into doubt any decision grounded in the prior medical reports." Ridings v. Apfel, 76 F. Supp. 2d 707, 710 (W.D. Va. 1999).

Wilkins requires the court to review the ALJ's decision "in the light of evidence which the ALJ never considered, and thus never evaluated or explained." Ridings, 76 F. Supp. 2d at 709. This task does not require the court to weigh the evidence, but rather merely to determine whether this additional evidence creates a "conflict," is "contradictory," or "calls into doubt any decision grounded in the prior medical reports." If so, the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If not, then the case can be decided on the existing record without the necessity of a remand.

Such an approach is consistent with the definitions of "new" and "material" evidence employed by the Fourth Circuit in Wilkins. Wilkins considers evidence to be "new" "if it is not duplicative or cumulative." 953 F.2d at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)). The reasons noted by the Ridings, Riley and

Smallwood courts are in accord with Wilkins' definition of "new" and "material." Duplicative or cumulative evidence will not meet the test for remand under Riley, Ridings, and Smallwood, nor will additional evidence submitted to the Appeals Council that has no reasonable possibility of changing the outcome. This approach also is consistent with the Fourth Circuit's opinion in Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996), where the court noted that it is the duty of the ALJ, and not a reviewing court, to resolve conflicts in the evidence.

Review of the additional medical evidence submitted to the Appeals Council reveals that there is a reasonable possibility that the additional evidence presented by Allen could change the outcome. Wilkins, 953 F.2d at 96. Included within the seventy-two pages submitted to the Appeals Council were several years of treatment records along with two unequivocal and strongly worded opinions from two of her treating physicians that Allen was unable to work.

At the time the ALJ made his decision denying disability, the record contained three opinions from treating physicians indicating that Allen was disabled. Those opinions included a July 2005 opinion from Dr. Davis, and two RFC forms completed by Drs. Schultz on June 1, 2005 and Dr. Keilman on June 22, 2006. The ALJ afforded no weight to the opinion of Dr. Davis, reasoning that he "did not provide treatment during the period at issue, did not specify limitations in functioning, and has not provided treatment records to support his conclusion." (R. 27.) The ALJ likewise gave no significant weight to the opinions of treating physicians Schultz and Keilman as he considered them to lack support and consistency with the other evidence of record. Instead, the ALJ relied almost exclusively on the consultative examining opinion of Dr. Humphries.

An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527 (d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p. The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why she discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The medical records provided to the Appeals Council include treatment records from Dr. Davis, Allen's treating orthopedic surgeon, from 1984 through 1999 for Allen's back and neck problems. These records refer to multiple surgeries and objective testing reflecting the chronic nature of her problems. Dr. Davis again examined Allen on January 9, 2007, and concluded that her back and neck problems continued to render her incapable of any gainful employment. (R. 361.) Dr. Pappagallo's note of January 23, 2007 states that he has treated Allen for approximately fifteen years, and that she is "totally permanently disabled." (R. 360.) These new opinions and medical records are consistent with the RFCs performed by treating sources Drs. Schultz and Keilman, and tend to undercut the ALJ's conclusion that the opinions of Drs. Schultz and Keilman were inconsistent with the bulk of the medical evidence. The inclusion of years of medical records from Dr. Davis' treatment of Allen negates the ALJ's criticism that Dr. Davis' 2005 opinion was unfounded. Both Drs. Davis and Pappagallo saw Allen for years, as opposed to the one session she had with Dr. Humphries, and the regulations require that absent persuasive contrary evidence, such treating source opinions should be accorded greater weight than that provided by the ALJ in this case. Plainly, there is a reasonable possibility that the new and material opinions and supporting medical records provided to the Appeals Council could change the outcome of the Commissioner's decision. Pursuant to <u>Wilkins</u>, therefore, it is **RECOMMENDED** that this case be **REMANDED** to the Commissioner to evaluate this evidence. Because this evidence is contained in the administrative record in this case, such a remand is pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case to Hon. James C. Turk, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are

entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 637(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of Court is directed to send certified copies of this Report and Recommendation to counsel of record for the parties.

Enter this 28th day of October, 2009.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge